**In re Doyle RIDER, Debtor.**

**ODLE CUMBERLIN AUCTIONEERS, a Colorado partnership, and Jim Odle and Charles E. Cumberlin, individually, Plaintiffs,**

v.

**Doyle RIDER, Defendant.**

**Bankruptcy No. 84–B–06067–C.
Adv. No. 87–M–0980.**

United States Bankruptcy Court, D. Colorado.

July 21, 1988.

Charles W. Lilley, Denver, Colo., for debtor/defendant.

C. Gordon Dickinson, Sterling, Colo., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Debtor/Defendant's ("Debtor" herein) Motion for Summary Judgment to dismiss the Complaint to Determine Discharge filed by Odle Cumberlin Auctioneers, Jim Odle, and Charles E. Cumberlin (collectively "Plaintiff" or "Odle" herein).

For the reasons set forth in this Opinion, the Court will grant the Debtor's Motion for Summary Judgment and dismiss Plaintiff's Complaint. The decision rests largely with the particular facts and circumstances of this case and are as follows:

1. In March, 1984, Odle, a commercial auctioneer, sold farm machinery owned by the Debtor at an auction. He did so at the request and direction of the Debtor. Unbeknownst to Odle, the farm machinery had been pledged as security to Massey–Ferguson by the Debtor.

2. Following the sale, Odle turned over net proceeds of the sale to the Debtor in the amount of approximately $32,665.00. However, the Debtor remained indebted to Massey–Ferguson for approximately $29,-000.00. The Debtor failed to use the sale proceeds to retire the debt.

3. The Debtor filed for protection under Chapter 11 of the Bankruptcy Code on December 10, 1984. The case was subsequently converted to a Chapter 7 on May 23, 1985.

4. On December 12, 1984 a demand letter was sent to Odle from Massey–Ferguson stating that Odle had improperly sold the Debtor's farm machinery without regard to Massey–Ferguson's security interest. The demand letter stated, in part, that "Mr. Rider has no money and cannot pay us" and requested the balance owed by the Debtor to Massey–Ferguson be paid by Odle.

5. It is undisputed that Massey–Ferguson was listed as a creditor of the Debtor, but Odle was not.

6. Notice to creditors was sent by the Court stating the last day to object to the Debtor's discharge was September 9, 1985. Since Odle was not listed as a creditor, he did not receive any official notice of the bankruptcy, or notice of the last day on which to file objections to discharge.

7. In January, 1985, approximately one month after the Debtor filed for bankruptcy, Massey–Ferguson filed suit in state district court against Odle alleging that the Debtor's farm machinery had been improperly sold by Odle. Massey–Ferguson ob-

tained a judgment against Odle on or about February 3, 1986.

8. On November 17, 1987, over two years after expiration of the bar date, Odle filed a Complaint, pursuant to 11 U.S.C. § 523, objecting to the discharge of any debt, or claim, Odle had against the Debtor. In the Complaint Odle alleged fraudulent misrepresentation and fraudulent concealment on grounds that the Debtor concealed from Odle the fact that the farm machinery was pledged to and served as collateral for Massey–Ferguson.

9. The Debtor sent to Odle Interrogatories, Requests for Admission, and Requests for Production of Documents on or about February 8, 1988. Interrogatory number five asked: "State with particularity when you first knew of Rider's bankruptcy, including the circumstances, date, party with whom you communicated, and identify any documents relating to this knowledge." In his response, Odle stated "In December of 1984, Mr. Kaplan of Massey–Ferguson mentioned in a phone conversation." With regard to the Debtor's Request for Admission number one, the Debtor asked: "Admit that you had knowledge of Rider's bankruptcy prior to September 9, 1985," to which Odle responded "yes."[1]

## DISCUSSION

This matter can be decided on the Debtor's Motion for Summary Judgment. Summary judgment is proper where there is no genuine issues of material fact and that a party is entitled to judgment as a matter of law. *See,* B.R. 7056, F.R.Civ.P. 56, *International Brotherhood of Electrical Workers Local 969 v. Babcock & Wilcox,* 826 F.2d 962, 964 (10th Cir.1987), and *In re Costell,* 75 B.R. 348 (Bankr.N.D.Ohio 1987). A motion for summary judgment must be

construed in the light most favorable to the party opposing the motion. *Id.* at 351. Upon review of the pleadings filed in this case and with reliance on Odle's discovery responses, there is no dispute as to the salient facts; there are no genuine issues of material fact remaining and judgment may enter as a matter of law.

The issue to be decided in this case can be stated as follows: Is Odle, an unlisted creditor of the Debtor who had no formal notice of Debtor's bankruptcy and no actual knowledge of the bar date for filing objections to discharge, barred nonetheless from filing discharge litigation?

As a preliminary, but necessary, step in deciding this case, the Court must first establish on what basis and on what legal authority Odle is proceeding and then focus on the real issued raised by the Plaintiff, although not stated by him. While Odle recites the grounds for discharge as fraud and misrepresentation, he does not cite the specific applicable authority on which he relies. The claims of "fraudulent misrepresentation" and "fraudulent concealment," however, implicitly invoke 11 U.S.C. § 523(a)(2) and (4).[2]

 If that authority was the correct and exclusive avenue available to Odle, then this decision would be easy. Since Odle must initiate and file a complaint to except from discharge a debt under Section 523(a)(2) and, (4) within 60 days after the first date set for the Section 341 meeting— here September 9, 1985—and Odle did not file his Complaint until two years later, on November 17, 1987, the Complaint must be dismissed, or judgment entered for the Debtor. 11 U.S.C. § 523(a)(2) and (4), (c); B.R. 4007; *In re Alton,* 837 F.2d 457 (11th Cir.1988). Reliance on Section 523(a)(2)

---

**1.** These findings of fact are in strict accord with the Plaintiff's Answers to Interrogatories and Requests for Admission. In Plaintiff's Response to and Memorandum Brief in Support of its Response to Debtor's Motion for Summary Judgment, however, Plaintiff denies notice or actual knowledge of the bankruptcy.

**2.** "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...."
11 U.S.C. § 523

and (4) is not, however, the correct and exclusive course available to Odle.

■ Rather, Odle's proper and only available course to claim an exception to discharge, under these facts, is to allege an exception to discharge under 11 U.S.C. § 523(a)(3)(B) which provides, in pertinent part, that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or·actual knowledge of the case in time for such timely filing and request.* (Emphasis added)

■ This Court is persuaded that pursuant to Section 523(a)(3)(B), Odle, although neither listed nor scheduled, had sufficient notice and knowledge of the case in time to timely file a proof of claim and request a determination of dischargeability such that he is, now, barred from filing a request for a determination of dischargeability.

While there is no dispute that Odle was not listed as a creditor of the Debtor, that he did not receive actual or formal written notice of the Debtor's bankruptcy filing through the Bankruptcy Court, and that he did not have actual knowledge of the bar date, still there is ample evidence in the pleadings and from the responses solicited through discovery, that Odle received notice and had knowledge about the Debtor's bankruptcy filing. The notice received and knowledge acquired was in an amount and of a quality sufficient to preclude Odle from now filing his Complaint to Determine

Dischargeability, two years after the bar date has passed.

This Court is, first and foremost, mindful of the fundamental constitutional right of creditors to adequate notice on matters or procedures which can abrogate substantive rights. It is a basic tenet that creditors are entitled to procedural due process before their rights are extinguished and, generally, due process requires that individualized notice be given to known creditors before rights can be affected. *Reliable Elec. Co., Inc. v. Olson Constr. Co.,* 726 F.2d 620 (10th Cir.1984); *In re Herd,* 840 F.2d 757 (10th Cir.1988); *In re Blumer,* 66 B.R. 109 (9th Cir. B.A.P. 1986); *In re Bankwest Boulder Indus. Bank,* 82 B.R. 559, 561 (Bankr.D.Colo.1988).

In *Reliable Elec. Co., Inc. v. Olson Constr. Co.,* 726 F.2d 620, 623 (10th Cir. 1984), we discussed the requirement that adequate formal notice must be given to known creditors to be constitutionally adequate.

*In re Herd, supra* at 759.

More precisely, the Court is aware that, when notice issues are raised in bankruptcy reorganization proceedings, "... a creditor who has general knowledge of a debtor's reorganization proceeding has no duty to inquire about further court action. The creditor has a 'right to assume' that he will receive all the notices required by statute before his claim is forever barred." *Reliable Electric Co. Inc., supra* at 622. Having acknowledged these tenets, and the paramount importance of notice provisions, and notions of due process, still the facts in this case persuade the Court that Odle should be barred from now pursuing discharge litigation.

The salient and decisive facts which reveal that Odle had *knowledge* and was given *notice* are as follows:[3]

a. Odle admits that he became aware of the bankruptcy in December, 1984 through a telephone conversation

---

**3.** It is significant to this decision that Odle's Answers to Interrogatories and replies to Request for Admissions have not been amended, supplemented, or withdrawn in whole or in part.

with a representative from Massey–Ferguson.[4]

b. Odle admits he knew of the bankruptcy before the bar date of September 9, 1985.[5]

c. Odle received a demand letter December 12, 1984, from Massey–Ferguson requesting that he pay the Debtor's outstanding balance because of Odle's improper sale of the farm machinery, which ultimately led to a state court suit with Massey–Ferguson. Litigation ensued and judgment entered against Odle without Odle joining Debtor as a co-defendant or third-party defendant.[6]

d. Odle admits having "knowledge regarding numerous hearsay statements that Mr. Rider may have filed a bankruptcy Petition."[7]

While any one of these facts might not suffice, standing alone, to demonstrate that Odle had notice, or had knowledge, of the bankruptcy case, the collective impact of these separate items convinces the Court that Odle had notice, as well as knowledge, of the Debtor's bankruptcy proceeding sufficient to afford him ample time to file his proof of claim and to timely request a determination of dischargeability.

A recent Circuit Court case interpreting and applying Section 523(a)(3)(B) is compelling to this Court in terms of law, logic, and equity. *In re Alton, supra.*[8]

In *Alton,* a creditor, unlisted and unscheduled by the debtor, received no notice of the bankruptcy case from the Bankruptcy Court and no notice of either the creditors'

meeting or the last day on which to file a complaint regarding dischargeability of debts. The creditor's attorney did receive an undated, deficient "notice of Chapter 11 reorganization and automatic stay" from the debtor's counsel. The creditor made tardy claims based on fraud pursuant to Section 523(a)(2), (4) and/or (6), and filed an application to extend the time within which he could file a complaint in Bankruptcy Court. That application was filed shortly after the creditor learned that the bar date had passed, which was several weeks after the "60 days following the first date set for the meeting of creditors." B.R. 4007(c). The Bankruptcy Court denied the application and the U.S. District Court affirmed.

The Circuit Court first recognized the possibility of contrived circumstances arranged by the debtor which could result in inequities for the creditor, but the court proceeded nonetheless to affirm and, thus, bar the creditor's action under Section 523(a)(3)(B). Creditor claimed (1) that B.R. 4007(c) did not bar his tardy filing because he received no notice of the bar date from the court as also required by B.R. 4007(c), (2) that his rights to due process under the Fifth Amendment were denied, and (3) that because the debtor failed to schedule the creditor, equities demanded additional time to file. Rejecting each argument, the Court reasoned that the creditor had been given sufficient notice and possessed adequate knowledge of the existence of a bankruptcy case such that the creditor had a duty to make further inquiry and had ample time and opportunity to protect his

**4.** Interrogatory No. 5: *See,* footnote 1.

**5.** Request for Admission No. 1: *See,* footnote 1.

**6.** Interrogatory No. 3: "State the name of any person associated with Massey–Ferguson with whom you dealt in any way in connection with the subject matter of the Complaint. For each such person, state the nature of the dealings you or people associated with you had with such person, the date of such dealings, and identify any documents evidencing any communications with such person."
 Answer: "We received a letter dated December 12, 1984, from H. E. Kaplan, Regional Collection Manager for Massey–Ferguson. On December 15, 1984, Charles Cumberlin phoned Mr. Kaplan."

**7.** "... Plaintiffs admit the allegations contained in Paragraph 6 of Defendant's Motion only insofar as it relates to Plaintiffs' knowledge regarding numerous hearsay statements that Mr. Rider may have filed a bankruptcy petition. Plaintiffs deny that they had notice or actual knowledge of Debtor's filing." Plaintiff's Response to Motion for Summary Judgment, p. 5.

**8.** Unfortunately, the similarity of that case to the instant case extends to the Circuit Court's observation that "... this is a hard case, but ... cannot agree that it should be allowed to make bad law." *In re Alton, supra* at 459.

rights and interests as a creditor in the bankruptcy. The court stated:

Section 523(a)(3)(B) specifically provides that when a debtor fails to list those debts incurred fraudulently or incurred because of malicious injury to another or lists them too late to allow a creditor to file a proof of claim and a dischargeability complaint in a timely manner, then those debts will be undischarged 'unless such creditor had *notice or actual knowledge of the case in time for such timely filing and request*' (emphasis added). [Footnote omitted.] The statutory language clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates. This furthers the bankruptcy policy affording a 'fresh start' to the debtor by preventing a creditor, who knew of a proceeding but who did not receive formal notification, from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed him is undischargeable.

*In re Alton, supra* at 460.

The Court in *Alton*, recognized that there is some "obligation," some "duty to inquire," on a creditor that has notice, or some actual knowledge, of a bankruptcy case:

Despite the misleading actions, inadvertent or intentional, of debtor Alton, the time specifications set out in the Bankruptcy Code are sufficiently clear to have placed an obligation on creditor Byrd to follow the case and to take the timely action necessary to pursue his claim.

... [S]ection 523 of the Code, which Rule 4007 is designed to implement, places a heavy burden on the creditor to protect his rights: a debt of the type presented here is automatically discharged unless the creditor requests a determination of dischargeability. The one narrow exception to this rule incorporates a duty-to-inquire approach to notice issues.

A holding that the language of Rule 4007(c) about notice gives a creditor the right to such official notice before he is under a duty to make inquiries to protect his own rights would conflict with the language of 11 U.S.C. sec. 523, which makes actual notice sufficient to impose a duty-to-inquire on the creditor. We decline to interpret the Rule in a way that would engender such a conflict.

*In re Alton, supra,* at 459–460.

The *Alton* court addressed the due process issue by reasoning that a creditor's right to due process is not abrogated if the creditor is afforded notice, or has knowledge, sufficient to "apprise [him] of the pendency of the action and afford [him] an opportunity to present his objections. *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)." *In re Alton, supra* at 461.

In the instant case the facts admitted by Odle demonstrate notification of a pending case and an opportunity, a ten-month opportunity, to allow Odle to present his objections. Odle is, unfortunately, similar in conduct to, and bound by the same standards as, the creditor in *Alton:*

If Byrd [creditor], once warned of the bankruptcy proceeding, had made a minimal effort to determine the date of the filing of the petition, he would have realized the outside dates for the filing of his complaint contesting the dischargeability of his claim or for a motion to extend such time. Instead, appellant Byrd made no such effort and cannot now properly complain of the consequences of his inaction.

*In re Alton, supra* at 461.

If a creditor does not act properly, timely and diligently, then the creditor's claim can be discharged. *In re Price,* 79 B.R. 888, 892 (9th Cir.B.A.P.1987). In this Court's opinion and under these particular circumstances of admitted "notice" and "knowledge," as a creditor Odle had an affirmative duty, an "obligation," a "duty to inquire," after (a) the December, 1984 telephone conversation with a representative of Massey–Ferguson, (b) receiving the December 12, 1984 demand letter, (c) the law-

suit by Massey–Ferguson, and (d) the numerous hearsay statements that the Debtor had filed for bankruptcy. Odle could have easily discovered that he was not a scheduled creditor and, at that point, Odle could have taken action to make sure he was properly scheduled and taken the appropriate steps to protect his interests under Section 523 and B.R. 4007. In doing so, Odle could have participated in the bankruptcy process, availed himself of the benefits of the law, and properly and timely asserted his claim of an exception to discharge against the Debtor. *See, In re Butt,* 68 B.R. 1001, 1003 (Bankr.C.D.Ill. 1987).

A compelling aspect of Odle's conduct, perhaps the capstone of his tardy and belated action, is that he waited nearly 20 months from the time judgment was entered against him in favor of Massey–Ferguson to pursue his claim against the Debtor. He waited almost three years to file his Complaint objecting to the discharge of debt after he first heard of Debtor's bankruptcy in December, 1984, and he had at least ten months between his first informal notification of a pending bankruptcy in December, 1984 until the bar date beyond which complaints to determine dischargeability were precluded, on September 9, 1985. Odle admitted knowledge of the bankruptcy prior to the September 9, 1985 bar date, yet he failed to take any initiative, exercise any of his rights, make any "inquiry," or otherwise act in a timely, responsible or diligent manner.

If nothing else, Odle is certainly guilty of laches. Laches, an equitable doctrine, is generally applied to protect a party against prejudice and harm which may result from unreasonable delay. *In re Barsky,* 85 B.R. 550, 554 (Dist.Ct.C.D.Ca.1988). Looking at the timeline of this case as a whole, the Court concludes that under the circumstances, the three year delay by Odle is unreasonable and inexplicable. "Trustees, creditors, debtors, and even bankruptcy judges are entitled to some measure of finality in the bankruptcy proceedings." *Id.* at 554.

This Court is familiar with the holding of *Mullane v. Central Hanover Bank and Trust Co., supra,* and the recent Tenth Circuit case *In re Herd, supra.*

This ruling would initially appear to clash with *In re Herd, supra,* which states in pertinent part as follows:

> Even if a creditor is aware of bankruptcy proceedings, there must be reasonable notice before a claim will be barred for untimeliness. [Citations omitted] Inquiry notice of the bar date, in this situation, is not enough ... [a]ctual knowledge of the filing of a bankruptcy does not negate the statutory notice requirements nor does it place a duty on creditors to inquire regarding the time limitations for filing claims. [Citations omitted] 'The notice must be of such nature as to reasonably convey the required information....'

*Herd, supra* at 759.

However, this matter is distinguished from *Herd* on its facts. Most notable among the distinguishing, and decisive, facts are the admissions of Odle as to notice and knowledge of the bankruptcy case, as well as the alacrity absent in Odle's conduct as a creditor. Further, there is recognition of the different treatment of notice requirements to "known" creditors as in *Herd* as compared to "unknown" creditors, as in this case.[9] Moreover, Odle's effort to bar a discharge in Chapter 7 is fundamentally different than the creditor's effort in *Herd* to file a "late" claim in

---

**9.** *In re Herd, supra* at 759; *In re Standard Metals Corp.,* 48 B.R. 778, 787 (Bankr.D.Colo.1985): "In the context of bankruptcy reorganizations, a distinction should be drawn between creditors who are known to the debtor as opposed to unknown possible claimants. Known or identifiable creditors and claimants have a right to assume that they will receive all of the notices required by statute before their claims are forever barred. Such persons, even after receiving actual notice of the bankruptcy, have no duty to inquire about further court action. *Reliable Electric Co. Inc. v. Olson Construction Co., supra; See also, New York v. New York, New Haven and Hartford* [344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953)], *supra.* There is a lack of authority as to the amount and type of notice which must be given to unknown claimants."

Chapter 11.[10]

Based on the foregoing specific facts, it is hereby ordered that the Defendant/Debtor's Motion for Summary Judgment and Dismissal of Plaintiff's Complaint is hereby GRANTED.

---

**10.** The proscription against late filed discharge litigation pursuant to Section 523 is generally applied more stringently than the proscription against late filed proofs of claim. Compare B.R. 3003, B.R. 4007; *See, In re Standard Metals, supra* at 787–788.