**In re PARKER NORTH AMERICAN, a Delaware corporation, aka PNA Corporation, Debtor.**

**PARKER NORTH AMERICAN, a Delaware corporation, aka PNA Corporation, Plaintiff,**

v.

**The RESOLUTION TRUST CORPORATION, as Receiver for Sooner Federal Savings & Loan Association, Defendant.**

**Bankruptcy No. SA 89–01647 JR.**
**Adv. No. SA 89–0589 JR.**

United States Bankruptcy Court,
C.D. California.

Sept. 4, 1991.

Marc J. Winthrop of Lobel, Winthrop & Broker, Irvine, Cal., for debtor in possession.

Theodore Q. Eliot of Gable & Gotwals, Tulsa, Okl., for Resolution Trust Corp.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Defendant Resolution Trust Corporation ("RTC"), receiver for Sooner Federal Savings & Loan Association ("Sooner"), moves for summary judgment (the "Motion") asserting that there are no issues of material fact and RTC is, therefore, entitled to judgment as a matter of law upon the following defenses: (1) debtor's preference claim (the "Claim") should be dismissed because debtor failed to file a claim against the receivership estate of Sooner as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d); (2) the prudential mootness doctrine [1] mandates dismissal of debtor's claims; (3) RTC has a valid defense under 11 U.S.C. § 550(b)(1) to the Claim; (4) the Claim is barred by the common law estoppel doctrine first enunciated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (the "D'Oench Doctrine"). After conduct-

ing a hearing on July 1, 1991, I took the matter under submission.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## STATEMENT OF FACTS

In support of the Motion, RTC points out that debtor entered into a stipulation (the "Stipulation") regarding the factual and legal issues for summary judgment. According to the Stipulation, debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on March 17, 1989. On June 1, 1989, debtor initiated this adversary proceeding by filing a complaint against Sooner to avoid and recover certain preferences pursuant to 11 U.S.C. § 547(b). The complaint was subsequently amended on July 26, 1989 (the "Amended Complaint"). According to the Amended Complaint, debtor seeks recovery from Sooner of $4,650,-249.22 that debtor contends represents preferential payments made by debtor to Sooner. According to the Stipulation, RTC does not contest the allegations in the Amended Complaint that establish the elements of a preference and the amount. However, RTC asserts the above four defenses. Debtor also agreed not to contend that RTC waived or is estopped or barred from asserting the above defenses based

---

1. The Prudential Mootness Doctrine was explained in *FSLIC v. Locke,* 718 F.Supp. 573 (W.D.Tex.1989). It said that the fundamental purpose of a court is to adjudicate claims and grant relief to a party. Where a court cannot afford meaningful relief to a litigant, the lawsuit becomes moot and the court should refrain from exercising jurisdiction in such a proceed-

ing. Here RTC argues that it must liquidate all claims against Sooner in accordance with the priority scheme set forth in 12 C.F.R. § 360.2, which grants priority to depositors' claims over general creditors. Under the circumstances, any recovery for general creditors is highly unlikely.

upon its conduct, activity, or positions previously taken in the litigation.

The parties further stated on the record that if I rule against RTC with respect to all the defenses, I should grant summary judgment for debtor.

## DISCUSSION

The first defense that RTC asserts is that debtor failed to timely file the Claim. Under FIRREA, 12 U.S.C. § 1821(d)(5)(C), RTC is required to mail a notice informing creditors of a failed institution of the date by which they must file their claims (the "Notice"). The Notice is to be sent to the creditor's last address appearing on the books and records of the institution. If the Notice is served properly, "claims filed after the date specified ... shall be disallowed and such disallowance shall be final." FIRREA, 12 U.S.C. § 1821(d)(5)(C).

In November 1989, RTC was appointed receiver for Sooner, and certain assets and liabilities were thereupon transferred to the receivership estate. RTC mailed the notice setting February 21, 1990 as the last date for the filing of claims (the "Bar Date"). It sent the Notice to debtor at 840 Newport Center Drive, Newport Beach, California 92660 (the "Newport Address"). However, prior to the sending of the Notice, debtor had moved its offices to a new location at 3505 Cadillac Avenue, Building O, Suite 209–A, Costa Mesa, California 92626 (the "Costa Mesa Address"). Debtor did not receive the Notice. Debtor also asserts that the Newport Address used by RTC was incorrect because it did not contain the suite number (760). Attorneys for debtor state that the attorneys for the RTC knew that debtor had moved to the Costa Mesa Address before mailing the Notice, because they had served various pleadings on debtor at the Costa Mesa Address.

Debtor did not file the Claim prior to the Bar Date. Rather, it seeks to assert the Claim through this adversary proceeding.

■ The law is clear that Congress set up the claims procedures in FIRREA (the "Procedures") to be the exclusive means for the assertion of a claim against a failed banking institution. *United States v. Altman*, 762 F.Supp. 139, 142–43 (S.D.Miss. 1991). Section 1821(d)(13)(D) of FIRREA provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [Resolution Trust] [sic] Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver....

As the court stated in *Altman:*

Not only does FIRREA establish the procedures noted above for the determination of claims by RTC, it also expressly limits a claimant's ability to present claims in any manner other than that specifically provided for under the Act. While section 1821(d)(6) clearly envisions the presentation of claims for RTC determination prior to the institution of a suit in federal court, other provisions of FIRREA leave no doubt that compliance with the statutorily proscribed procedures is a mandatory prerequisite to maintenance of a federal suit.[2]

A claim, therefore, must initially be submitted to RTC for an administrative deter-

---

2. *Altman* at 142.

The legislative history leaves no doubt, as well. As the court stated in *Tuxedo Beach Club Corp. v. City Fed. Sav. Bank,* 737 F.Supp. 18, 19 (D.N.J.1990):

The House Report discusses claims determination by receivers for failed institutions. H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., reprinted in 1989 U.S.Code Cong. & Ad. News 86, 214. The House clearly states that only

"[a]fter exhaustion of streamlined administrative procedures, a claimant has a choice to ... bring the claim de novo in the District Court." *Id.* "Resort to: either the District Courts or administrative process is available only after the claimant has first presented its claim to the FDIC." *Id.* at 214. "[E]xhaustion is a proper prerequisite to further action by a claimant...." *Id.* at 215.

mination of its validity. If RTC does not make a determination within 180 days, a claimant is then free to file an action in the appropriate district court. Alternatively, the claimant can seek de novo consideration of its claim pursuant to the Administrative Procedure Act, 5 U.S.C. § 554. The court in *Circle Indus. v. City Fed. Sav. Bank,* 749 F.Supp. 447 (E.D.N.Y.1990), *aff'd* 931 F.2d 7 (2d Cir.1991) stated: "As is clearly indicated in the legislative history of FIR-REA, Congress intended that a district court not have subject matter jurisdiction of state law claims asserted against the RTC ... until those claims are first presented to and adjudicated by the RTC or the FDIC." *Id.* at 554.

In *Circle,* the plaintiff asserted claims against the failed institutions for breach of contract, breach of fiduciary duty, and fraudulent misrepresentation. The RTC moved for dismissal, asserting lack of jurisdiction, because the plaintiff had not complied with the claims procedure of FIR-REA. The court agreed and dismissed the action as lacking subject matter jurisdiction. *Id.* at 455.

■ Although the parties to this proceeding did not argue the issue of subject matter jurisdiction, it is appropriate for me *sua sponte* to question whether I have the power to decide the matters before me. Subject matter jurisdiction is a threshold issue, especially when dealing with FIR-REA and a claim asserted against a failed banking institution under the control of RTC.

■ Debtor has not followed the Procedures in asserting the Claim. Debtor's excuse is that it did not receive the Notice in time to file the Claim. This fact is undisputed. However, FIRREA does not create any exception to adherence to the Procedures. Furthermore, it clearly states that no court has the power to adjudicate a claim except in accordance with the Procedures. Since debtor did not file the Claim with RTC in accordance with the Procedures, this court does not have subject matter jurisdiction to conduct a *de novo* review of the Claim.

Debtor also argues that it has been denied due process because it did not receive the Notice setting the Bar Date. However, even though the Bar Date had passed, it still could have filed the Claim with RTC, thereby requiring RTC to reject the Claim in accordance with the Procedures. Instead, debtor filed this adversary proceeding which was an act inconsistent with the Procedures. As Justice Brandeis pointed out, "[N]o one is entitled to judicial relief ... until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938). See also *I.A.M. Nat'l Pension Fund v. Schulze Tool and Die Co.,* 564 F.Supp. 1285 (N.D.Cal.1983). To preserve its due process argument from jurisdictional attack, debtor should have filed the Claim with RTC, even though such a filing would have been beyond the Bar Date. By failing to do this, debtor has not attempted to exhaust its administrative remedy under FIRREA. Under the circumstances, this court does not have subject matter jurisdiction to determine the Claim. See, *United States v. Cal. Care Corp.,* 709 F.2d 1241, 1248 (9th Cir.1983) (When Congress designates an exclusive administrative avenue of appeal, the administrative proceedings are a precondition to federal court jurisdiction.)

■ I suppose debtor could argue that it has an absolute right to file this adversary proceeding under the Bankruptcy Code (the "Code") because the Code preempts FIRREA. Certainly, the Procedures restrict the power of bankruptcy courts to resolve preference actions when such claims are asserted against RTC. The procedures require that debtors go outside the bankruptcy courts to litigate actions that have traditionally been resolved in the bankruptcy courts. One might ask whether Congress intended this result. The Supreme Court has on many occasions stressed that in interpreting statutes, the court should first look to the statute. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). If the statute is clear and unambiguous, the court should enforce the statute as written without reference to leg-

islative history. *United States v. Ron Pair Ent.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). FIRREA is very clear that the Procedures are to be followed absolutely without exception. Congress knew when it passed FIRREA that the Bankruptcy Code provided certain special rights for debtors-in-possession and trustees that might result in claims being asserted against RTC. Despite this, it did not create any exception to the bright-line application of the Procedures. Accordingly, I believe the assertion of claims by a debtor-in-possession or trustee in bankruptcy must be done in accordance with the Procedures.

■ Even if I found that I have subject matter jurisdiction to decide these issues, debtor loses. Debtor argues that it is being denied due process because it did not receive notice of the Bar Date for filing the Claim. As previously mentioned, debtor did not submit the Claim to RTC. Furthermore, debtor knew that Sooner had been taken over by RTC. It should have known, and it is burdened with the knowledge, that RTC under FIRREA was required to give the Notice.

I found no case authority on this point involving FIRREA. Bankruptcy and tax decisions are split. After a bankruptcy case is filed, notice is sent to creditors informing them of the deadline for filing objections to discharge. Bankruptcy Rules 2002 and 4004(a). A complaint to determine dischargeability of debts under § 523(a)(2), (4) and (6) must be filed within 60 days of the first date set for the meeting of creditors. 11 U.S.C. § 523(c). In *In re Griffin*, 32 B.R. 36 (Bkrtcy.E.D.Cal. 1983), the court held that a creditor was not entitled to an extension of time to file an objection to discharge where the creditor never informed the debtor of a change of address that resulted in the creditor's failure to receive notice of the deadline.

A contradictory result was reached, however, in *Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984), a Chapter 11 case. After submission of a plan of reorganization, the Bankruptcy Code mandates that creditors be informed of the time for filing acceptances or rejections of the plan, of the confirmation hearing, and of time for filing objections to confirmation. In *Reliable*, a creditor was listed on the "Accounts Receivable," but not the "Creditors" schedule. The creditor was informed that debtor had filed a Chapter 11 case. The court held, because the creditor did not receive formal notice of the confirmation hearing and therefore was denied the opportunity to be heard at the confirmation hearing, the creditor was deprived of due process. *Id.* at 622.

In *In re Green*, 876 F.2d 854, 854–56 (10th Cir.1989), the court interpreted *Reliable* as saying that § 1141 is unconstitutional, because it allows for discharge of debts without actual notice. *Green* suggests that the *Reliable* notice was insufficient to be considered actual notice. In *Green*, a Chapter 7 case, the creditor had actual knowledge of the bankruptcy case in time to file a proof of claim, but no formal notice. Despite the lack of formal notice, the debt was discharged where the claim was filed after the bar date. *Id.* at 857.

In *In re Gregory*, 705 F.2d 1118 (9th Cir.1983), the creditor in a Chapter 13 case had notice of the meeting of creditors, but not specific notice of the plan. The court held that there was no violation of due process, because when a holder of a large, unsecured claim receives notice of the bankruptcy, "it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Id.* at 1123. Where notice is sufficient to excite attention and put the party on guard, the creditor is tainted with knowledge of everything that a reasonable inquiry would uncover. *Id.* Thus, a person cannot ignore facts that should lead one to further inquiry without being held accountable for those ultimate facts at issue.

I should point out, however, that *In re First City Nat'l Bank*, 759 F.Supp. 1048 (S.D.N.Y.1991), does question whether analogies to the Bankruptcy Code are appropriate. In *First City*, the court said

"Bankruptcy principles are not transferrable to the quite different context of bank receivership." *Id.* at 1053 n. 1. The court cited *Corbin v. Federal Reserve Bank,* 629 F.2d 233, 236 (2d Cir.1980), which said, "[B]ecause the powers and goals of a bank receiver are quite different, equitable principles developed in the reorganization context cannot simply be grafted onto the national banking statutes."

This issue has also arisen in tax cases. The IRS is required to send notice before it may assess or collect taxes. See 26 U.S.C. § 6213(a) (West 1986). The notice is valid as long as it is mailed to the taxpayer's last known address. See 26 U.S.C. § 6212(b)(1) (West 1986). This provision mirrors the language of FIRREA. A taxpayer's last known address is the one shown on the most recent return, unless the taxpayer communicates to the IRS a "clear and concise notice of a change of address." *United States v. Zolla,* 724 F.2d 808, 810 (9th Cir.1984). Admittedly, no such affirmative requirement has been established regarding FIRREA.

I have no evidence that debtor made any inquiry regarding the Notice or Bar Date. RTC followed the Procedures and sent the Notice to debtor based on the Newport Address set forth on its books and records. Debtor points out that it had moved to the Costa Mesa Address. However, I have no evidence that debtor informed Sooner of its change of address. Debtor must bear the ultimate responsibility, and bear the consequences for not doing this, especially given the importance of an accurate address on the books and records of Sooner.

Debtor cries foul, protesting that RTC's attorneys knew of its new address. I accept this assertion as fact, but I do not agree that this fact translates into knowledge by RTC of the new address for purposes of changing its books and records. In *Zolla,* the taxpayer argued that the IRS had notice of a change of address because, before the notice was mailed, an agent in the collections division of the same district office had obtained a more recent address while attempting to collect on an unrelated tax liability. The court stated:

> We adopt the view of the Tax Court that such information gained by a collector should not necessarily be imputed to the audit agents who mailed the notices of deficiency.... If we required agents mailing notices of deficiency to take into account address information acquired by agents in different divisions in the course of unrelated investigations, the IRS could ensure that notices were validly addressed only by systematically recording in a central file all address information acquired in any fashion.

*Id.* at 810–11. Debtor had a duty to inform Sooner of its address change specifically for the purpose of updating Sooner's books and records. Accordingly, debtor's due process argument fails.

RTC also argues alternatively that the Complaint should be dismissed because of the application of the Prudential Mootness Doctrine, its status as a transferee having the § 550(b)(1) defense [3], and the application of the federal common law doctrine enunciated in *D'Oench,* and its progeny. Because I have granted the Motion on jurisdictional grounds, I need not, and I choose not to, decide the Motion on the basis of these legal principles.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In accordance with the findings of fact and conclusions of law set forth in my memorandum opinion of this date, it is

ORDERED that defendant's motion for summary judgment is granted.

---

**3.** A mediate transferee under § 550(b)(1) of the Bankruptcy Code has a good faith defense to preference liability and recovery by a trustee or debtor in possession in bankruptcy.